OLEG ELKHUNOVICH (269238)
oelkhunovich@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1901 Avenue of the Stars, Suite 950
Los Angeles, California 90067-6029
Telephone:   (310) 789-3100
Facsimile:    (310) 789-3150

DREW D. HANSEN (*pro hac vice* to be filed) drewhansen@susmangodfrey.com
KATHERINE PEASLEE (310298)
kpeaslee@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1201 Third Avenue, Suite 3800
Seattle, Washington 98101-3000
Telephone:   (206) 516-3880
Facsimile:    (206) 516-3883

JUSTIN A. NELSON (*pro hac vice* to be filed) jnelson@susmangodfrey.com
SUSMAN GODFREY L.L.P.
1000 Louisiana, Suite 5100
Houston, TX 77002-5096
Telephone:   (713) 651-9366
Facsimile:    (713) 654-6666

*Attorneys for Plaintiffs*

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| EMONSTER KK., a Japanese corporation, and ENRIQUE BONANSEA,<br><br>Plaintiffs,<br><br>vs.<br><br>APPLE INC., a California corporation,<br><br>Defendant. | Case No.<br><br>**COMPLAINT FOR**<br><br> **(1) Trademark Infringement (Lanham Act)**<br><br> **(2) Trademark Infringement (Common Law)**<br><br> **(3) Unfair Competition (Cal. Bus. & Prof. Code §17200)**<br><br> **(4) Correction of Registration (15 USC §1119)**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs emonster k.k. and Enrique Bonansea (individually or collectively, "Plaintiffs") bring this action to enjoin Apple, Inc.'s ("Apple") illegal use of Plaintiffs' ANIMOJI trademark. Plaintiffs seek preliminary and permanent injunctive relief and all other remedies available under the laws of the United States

and the State of California and allege on knowledge as to itself and its own acts, and on information and belief as to all other matters, as follows:

## NATURE OF ACTION

1. This is a textbook case of willful, deliberate trademark infringement. With full awareness of Plaintiffs' ANIMOJI mark, Apple decided to take the name and pretend to the world that "Animoji" was original to Apple. Far from it. Apple knew that Plaintiffs have used the ANIMOJI mark to brand a messaging product available for download on Apple's own App Store. Indeed, Apple offered to buy Plaintiffs' mark but was rebuffed. Instead of using the creativity on which Apple developed its worldwide reputation, Apple simply plucked the name from a developer on its own App Store. Apple could have changed its desired name prior to its announcement when it realized Plaintiffs already used ANIMOJI for their own product. Yet Apple made the conscious decision to try to pilfer the name for itself—regardless of the consequences.

2. On September 12, 2017, Apple announced an "Animoji" feature for the new iPhone X set for release on November 3, 2017. This "Animoji" feature would allow users to make moving versions of selected emojis and send them in messages to friends and family. As Apple well knew, however, Plaintiffs have used the ANIMOJI mark in commerce on an app available on Apple's App Store since at least July 22, 2014. This ANIMOJI app allowed users to customize moving text or images and send them in messages. The United States Patent and Trademark Office ("USPTO") registered ANIMOJI to Plaintiffs March 31, 2015 (Reg. No. 4,712,559). Before Apple announced its Animoji feature, it had recognized Plaintiffs' senior rights to ANIMOJI. Apple itself removed an ANIMOJI-infringing third party app from Apple's App Store after Plaintiffs requested it. Yet Apple went ahead and announced—with great fanfare, including personal promotion by senior Apple executives—a new iPhone feature called "Animoji." Apple's "Animoji" feature deliberately infringes on Plaintiffs' ANIMOJI mark. Plaintiffs

thus bring this action for preliminary and permanent injunctive relief and all other remedies available to address Apple's deliberate and unlawful conduct.

## **PARTIES**

3. Plaintiff emonster k.k. is a Japanese corporation ("kabushiki kaisha," or "k.k.") organized under the laws of Japan.

4. Plaintiff Enrique Bonansea is a U.S. citizen and a natural person residing in Japan.

5. Defendant Apple, Inc. is a corporation organized and existing under the laws of the State of California and has its principal place of business in Cupertino, California.

## **JURISDICTIONAL STATEMENT**

### **Jurisdiction**

6. The Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 and 1338, 15 U.S.C. §§ 1116 and 1125, and 28 U.S.C. § 1367.

### **Venue**

7. Venue lies within this district because a substantial part of the events giving rise to these claims occurred in this district and Apple resides in this district for purposes of 28 U.S.C. § 1391(b) and (c).

### **Intradistrict Assignment**

8. This action arises in Santa Clara County because a substantial part of the events giving rise to the claim occurred in Santa Clara County. This is an intellectual property action subject to district-wide assignment pursuant to Civil L.R. 3-2(c).

## **FACTUAL ALLEGATIONS**

### **Enrique Bonansea Invents the ANIMOJI App and Protects the ANIMOJI Mark**

9. Enrique Bonansea ("Bonansea") is an independent software entrepreneur who has been involved with projects for Microsoft, Adobe, Nike, and

1  more. After working in Seattle during the 1990s, doing independent projects
2  through a Washington corporation, "emonster, Inc.," Bonansea moved to Japan in
3  2003, where he has a Japanese corporation, emonster k.k.

4      10.    Bonansea has been involved in designing "apps" (downloadable
5  applications to run on mobile devices such as smartphones). By 2014, Bonansea
6  had developed an app that would allow the user to animate characters inside
7  messages. After several months of development, Bonansea had a functioning app,
8  but he did not have a name. Bonansea brainstormed many naming options before
9  hitting on "ANIMOJI," a word that Bonansea had never before heard.

10     11.    Bonansea immediately knew that he had a perfect name, matched with
11 the inventive technology on his app. Bonansea acted swiftly to protect his
12 intellectual property rights in his creation. In August 2014, Bonansea's Washington
13 company, emonster, Inc., applied to register the ANIMOJI mark with the U.S.
14 Patent & Trademark Office ("USPTO") as standard characters (without claim to
15 any particular font, style, size, or color) for "Computer application software for
16 mobile and cellular phones and handheld computers, namely, software for use in
17 animating, processing, and transmitting images," identifying a "first use in
18 commerce" date of at least as early as July 22, 2014.

19     12.    The ANIMOJI application included a specimen of use showing the
20 ANIMOJI mark used in commerce: a screenshot from Apple's own App Store,
21 showing the ANIMOJI app available for download. The screenshot showed
22 "Animoji$^{TM}$ – Free Animated Texting," at the top, and described the app as
23 "Animoji$^{TM}$ – Fun & free animated texting – create your own animations! Instantly
24 reach the people you care about with fun, fully-custom, animated messages.
25 Animoji is a fast, free, and easy-to-use tool to animate your text and email
26 messages. Create your own animated text; using any characters, in any language,
27 including emojis. Then send your text via Messages or Mail. The recipient doesn't
28 need to have Animoji installed to receive the animated message!":



13. On December 24, 2014, the USPTO issued a "Notice of Publication" for ANIMOJI, explaining that the "mark of the application identified appears to be entitled to registration," and that the mark would be published on January 13, 2015, "for the purpose of opposition by any person who believes he will be damaged by the registration of the mark."

14. No opposition was filed with the USPTO, and the USPTO registered the ANIMOJI mark on March 31, 2015 (Reg. No. 4,712,559), with a "first use" and use "in commerce" of July 22, 2014, for "standard characters without any claim to any particular font, style, size, or color," in the class of "COMPUTER APPLICATION SOFTWARE FOR MOBILE AND CELLULAR PHONES AND HANDHELD COMPUTERS, NAMELY, SOFTWARE FOR USE IN ANIMATING, PROCESSING, AND TRANSMITTING IMAGES, IN CLASS 9 (U.S. CLS. 21, 23, 26, 36, AND 38)."

15. Plaintiffs have used the ANIMOJI mark continuously in commerce since 2014. The ANIMOJI app has been downloaded over 18,000 times (over 5,000 in the U.S.) since its launch in 2014. Apple's own App Store report demonstrates that Plaintiffs repeatedly upgraded ANIMOJI, with version 1.0 marked "Ready for

Sale" by Apple on July 23, 2014, followed then by Version 1.1 (marked "Ready for Sale" by Apple on August 12, 2014) and Version 2.0 (marked "Ready for Sale" by Apple on October 1, 2014). Plaintiffs use the ANIMOJI mark not just in the Apple App Store but more widely on the internet (under the domain name animoji.emonster.com); and through accounts on Facebook, Twitter, Instagram, and Pinterest.

16. In the summer of 2017, Bonansea was approached by others attempting to purchase his ANIMOJI mark. On information and belief, Bonansea believes these attempted purchasers of ANIMOJI were fronts for Apple, using such names as The Emoji Law Group LLC. These entities—acting (on information and belief) on behalf of Apple—threatened to file a cancellation proceeding if Bonansea did not sell the mark. Bonansea did not sell or license noting that he had spent significant time and effort perfecting the ANIMOJI product and the ANIMOJI brand. ANIMOJI was assigned to Bonansea's Japanese company, emonster k.k., in August 2017.

17. Meanwhile, in August 2017, Bonansea contacted the Apple App Store to request removal of other apps using terms similar to ANIMOJI on the grounds of trademark infringement. Many of the other apps were removed by the developers, and **Apple itself** removed one of the ANIMOJI-infringing apps from the App Store because it infringed Plaintiffs' mark.

**Apple Announces "Animoji" As Part of the New iPhone X**

18. On September 12, 2017, Apple announced the new iPhone X. Among the features Apple touted in the iPhone X press release was a new feature named "Animoji":



Apple's press release detailed "Animoji" in more detail:

> The TrueDepth camera brings emoji to life in a fun new way with Animoji. Working with A11 Bionic, the TrueDepth camera captures and analyzes over 50 different facial muscle movements, then animates those expressions in a dozen different Animoji, including a panda, unicorn and robot. Available as an iMessage app pre-installed on iPhone X, customers can record and send Animoji messages with their voice that can smile, frown and more.

19. Apple aggressively marketed this "Animoji" feature as part of its launch. In a September 12 "Apple Special Event," several top Apple executives personally promoted Animoji as one of the key features of the new iPhone X. (Video of this Apple Special Event is available online: https://www.apple.com/apple-events/september-2017.) Phil Schiller—Apple's Senior Vice President of Worldwide Marketing and a member of Apple's Executive Leadership Team—introduced Animoji as a "great experience": "Our team created something called 'Animoji,'" Schiller said, as the crowd started to applaud. "These are emojis that you control with your face," Schiller explained. "The way you create and share Animoji are right from within Apple Messages. You can pick from a dozen different animated emojis to share and express whatever you want to

1  express to your family and friends," Schiller said, as the crowd clapped and
2  cheered.

3      20.    Later in the launch event, Craig Federighi—Apple's Senior Vice
4  President of Software Engineering and a member of Apple's executive leadership
5  team—gave the crowd a live, on-stage demo of Animoji. "Now, of course, many of
6  us like to communicate with emoji," Federighi said, "and with Animoji, we can
7  now breathe our own personality into our favorites. It's available as an app right
8  inside of Message." Federighi touted how easy it was to incorporate Animoji into
9  messages: "just pick that up and use it as a sticker, drop it on my message like
10 that." "These can be so much fun you're going to want to share them," Federighi
11 said, "you can send it with just a tap . . . ." Federighi ended his live demo by
12 exchanging Animoji messages with Tim Cook, Apple's CEO.

13     21.    Schiller then came back on stage, showing the Animoji name on
14 screen as part of a list of the "innovative features" of iPhone X that "add up to a
15 new, better experience." And finally, further emphasizing the importance of the
16 Animoji feature to the iPhone X, Apple returned to the feature again near the end of
17 the special event, featuring it in a video narrated by Jony Ive—Apple's Chief
18 Design Officer. Ive touted the "new experiences" enabled by the iPhone X camera,
19 "like bringing emojis to life," as a video of him demonstrating the Animoji feature
20 played for the crowd.

21     22.    Apple's "Animoji" announcement quickly attracted widespread media
22 commentary, with articles in Wired, TechCrunch, The Verge, and more. The
23 Washington Post singled out the "Animoji" feature as one of the "highlights" of the
24 September 12 event.

25     **Apple Petitions to Cancel the ANIMOJI Mark**

26     23.    On September 11, 2017—the day *before* Apple publicly announced its
27 "Animoji" feature—Apple filed a petition with the USPTO to cancel the ANIMOJI
28 mark, arguing that the Washington corporation emonster, Inc. did not exist when

1  the ANIMOJI registration was filed. Plaintiffs' USPTO counsel immediately filed a
2  request for a technical correction, noting that the applicant had made a good-faith
3  error and should have filed to list the applicant as the Japanese corporation,
4  emonster k.k. Both the dissolved (at the time of application) Washington
5  corporation (emonster, Inc.) and the existing Japanese corporation (emonster k.k.)
6  had been acting as a single commercial enterprise at the time of application for the
7  ANIMOJI mark. The USPTO denied this request on the grounds that the
8  cancellation proceeding was already pending. And, to avoid any doubt, Plaintiffs
9  applied again (through emonster k.k.) for registration of ANIMOJI on September
10 12, 2017, based on the same first use in commerce date of July 22, 2014.

**Plaintiffs Demand Apple Cease and Desist from Infringing the ANIMOJI Mark And Try to Protect Their ANIMOJI Brand**

24.  Apple's launch of its "Animoji" feature created a significant problem for Plaintiffs. ANIMOJI is not a term that appears in common dictionaries such as Merriam-Webster. It is a made-up, invented word. Both Plaintiffs and Apple are using ANIMOJI for very similar products: software creating moving images (and, for Plaintiffs, moving text as well) that can be embedded into messages and sent. Both Plaintiffs and Apple are marketing their ANIMOJI brands using very similar messaging: for Plaintiffs, that ANIMOJI was "fun, free, and animated texting," and a "fast, free, and easy-to-use tool," where you could create something and then "send your text via Messages or Mail," Apple's SVP of Software Engineering Federighi similarly touted how "fun" and easy it was to incorporate Animoji into messages: "[T]hese can be so much fun you're going to share them," Federighi said, "you can send it with just a tap," and "just pick that up and use it as a sticker or drop it on my message like that."  And of course both Plaintiffs and Apple are using ANIMOJI through the same channels, namely, through iPhones—for Plaintiffs, ANIMOJI is available through Apple's own App Store as a messaging

feature for iPhones; for Apple, "Animoji" is touted as a messaging feature for iPhones.

25. These obvious similarities—an identical mark, used on closely related goods, available for the same product (an iPhone)—created significant practical problems for Plaintiffs in trying to protect their ANIMOJI brand. Plaintiffs had planned to release a new version of ANIMOJI at the end of 2017; however, after Apple announced Animoji, Plaintiffs had to cut this process short (so that Apple did not further associate the ANIMOJI mark in the public's minds with Apple) and submitted a preview of the update to Apple's App Store. This process—short-circuiting a software development process and submitting a rougher rather than more final version of an app precisely in an effort to retain control of a brand—shows the type of harm Plaintiffs are suffering: if Apple had not announced its infringing Animoji product, Plaintiffs could have proceeded with the full rewrite of the ANIMOJI app on its normal schedule and released a more complete product rather than having to rush to market with an unfinished product. Apple's infringing action is already causing Plaintiffs to lose control of their brand: a Google search for ANIMOJI used to turn up Plaintiffs' ANIMOJI app but now it turns up reference after reference to Apple's "Animoji" feature.

26. Apple absolutely knew about the ANIMOJI mark when it announced its own "Animoji" feature. Obviously, the ANIMOJI mark had been used by Plaintiffs since 2014 **in Apple's own App Store. Apple itself** had removed at least one app on complaint that it infringed the ANIMOJI mark. A basic trademark search for "ANIMOJI" conducted in 2017, before Apple announced the Animoji feature, would have turned up Plaintiffs' ANIMOJI mark registered **two years earlier**, as of March 31, 2015 under Reg. No. 4,712,559. Further—on information and belief—the prospective buyers of the ANIMOJI mark who approached Plaintiffs in the summer of 2017 were acting on Apple's behalf and under Apple's

instructions. And Apple filed for cancellation of the ANIMOJI mark a day **before** it announced its "Animoji" feature.

27. Apple is a classic willful infringer. Apple knew about Plaintiffs' senior rights to ANIMOJI, both as a matter of registration with the USPTO and a matter of use by Plaintiffs in commerce since 2014. Apple knew that its "Animoji" feature was such a closely related service to Plaintiffs' ANIMOJI app that confusion was virtually certain. Apple had recognized Plaintiffs' trademark rights by receiving takedown requests from Plaintiffs, after which the ANIMOJI-infringing apps were removed. Apple (on information and belief) tried and failed to buy the ANIMOJI brand from Plaintiff. And yet Apple still went ahead and used the ANIMOJI mark anyways. This is the paradigm of deliberate, willful infringement.

28. Plaintiffs' counsel sent a cease-and-desist letter to Apple on September 12, 2017. Yet, as of the date of filing of this Complaint, Apple has not changed the name of its Animoji feature or stopped its willful, deliberate infringement of Plaintiffs' ANIMOJI mark.

29. On November 3, 2017, Apple is set to release the iPhone X to the general public with the infringing "Animoji" feature included. This release will exacerbate the confusion that Apple started with its September 12, 2017 product announcement and will result in the association of "Animoji" with Apple even though the name belongs to Plaintiffs.

**FIRST CAUSE OF ACTION**
**(Trademark Infringement – Lanham Act)**

30. Plaintiffs repeat and reallege each and every previous allegation and incorporates them by reference as if fully set forth herein.

31. Plaintiffs have used the ANIMOJI mark since 2014 to identify its "Animoji" app in California, the United States, and worldwide. In addition, Plaintiffs have a valid, registered trademark (Reg. No. 4,712,559) for ANIMOJI.

Plaintiffs' thus have an action under the Lanham Act's protections for registered and unregistered marks.

32. Apple's use of Plaintiffs' ANIMOJI mark will likely cause confusion as to source, sponsorship, affiliation, or association. With two companies using the identical, made-up word to sell a very similar product (both related to messaging), confusion is highly likely: actual or potential customers of Plaintiffs' ANIMOJI are likely to be confused and believe Apple is the true source, sponsor, or approver of Plaintiffs' app, and vice versa—actual or potential customers of Apple's "Animoji" feature are likely to be confused and believe Plaintiffs are the true source, sponsor, or approver of Apple's "Animoji."

33. Apple's wrongful activities have caused plaintiffs irreparable injury. Even after receiving a cease-and-desist letter from Plaintiffs, Apple still continues to use the infringing ANIMOJI mark. This causes injury to Plaintiffs' reputation that cannot be remedied through damages, and plaintiffs have no adequate remedy at law. Plaintiffs are entitled to preliminary and permanent injunctions pursuant to 15 U.S.C. § 1116 restraining and enjoining Apple and its agents, servants, employees, and all persons acting thereunder, in concert with, or on their behalf, from using in commerce the ANIMOJI mark or any colorable imitation thereof.

34. Pursuant to 15 U.S.C. § 1117, Plaintiffs are also entitled to recover (1) Apple's profits (2) Plaintiffs' ascertainable damages, and (3) Plaintiffs' costs of suit. Apple's willful use of Plaintiffs' ANIMOJI mark without excuse or justification renders this an exceptional case and entitles Plaintiffs to its reasonable attorney fees.

## SECOND CAUSE OF ACTION
### (Trademark Infringement – Common Law)

35. Plaintiffs repeat and reallege each and every previous allegation and incorporates them by reference as if fully set forth herein.

36. Plaintiffs have common law rights in the ANIMOJI mark under California law. Plaintiffs have used ANIMOJI continuously in commerce since 2014, several years before Apple announced its infringing use of the ANIMOJI mark.

37. Apple's use of Plaintiffs' ANIMOJI mark will likely cause confusion as to source, sponsorship, affiliation, or association. With two companies using the identical, made-up word to sell a very similar product (both related to messaging), confusion is highly likely: consumers of Plaintiffs' ANIMOJI are likely to be confused and believe Apple is the true source, sponsor, or approver of Plaintiffs' app, and vice versa—consumers of Apple's "Animoji" feature are likely to be confused and believe Plaintiffs are the true source, sponsor, or approver of Apple's "Animoji."

38. Apple's wrongful activities have caused Plaintiffs irreparable injury. Even after receiving a cease-and-desist letter from Plaintiffs, Apple still continues to use the infringing ANIMOJI mark. This causes injury to Plaintiffs' reputation that cannot be remedied through damages, and plaintiffs have no adequate remedy at law. Plaintiffs are entitled to preliminary and permanent injunctions restraining and enjoining Apple and its agents, servants, employees, and all persons acting thereunder, in concert with, or on their behalf, from using in commerce the ANIMOJI mark or any colorable imitation thereof.

39. Plaintiffs are also entitled to recover (1) Apple's profits, (2) Plaintiffs' ascertainable damages, and (3) Plaintiffs' costs of suit. Apple's willful use of Plaintiffs' ANIMOJI mark without excuse or justification entitles Plaintiffs to their reasonable attorney fees and punitive damages.

### THIRD CAUSE OF ACTION
(Unfair Competition – Cal. Bus. & Prof. Code § 17200 and Common Law)

40. Plaintiffs repeat and reallege each and every previous allegation and incorporates them by reference as if fully set forth herein.

41. Apple's acts, as alleged above, constitute unlawful and/or unfair business practices in violation of the California Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200 et seq.

42. Apple's acts are unlawful and/or unfair under the UCL because Apple's use of the ANIMOJI mark in California is likely to confuse consumers as to the source, origin, or affiliation of Apple's services.

43. Apple's acts of unfair competition in the state of California have caused Plaintiffs irreparable injury. Plaintiffs believe that unless said conduct is enjoined by this Court, Apple will continue and expand these activities to the continued and irreparable injury of Plaintiffs. This injury includes injury to Plaintiffs' reputation that cannot be remedied through damages, and Plaintiffs have no adequate remedy at law. Plaintiffs are entitled to preliminary and permanent injunctions restraining and enjoining Apple and its agents, servants, employees, and all persons acting thereunder, in concert with, or on their behalf, from using in commerce the ANIMOJI trademark or any colorable imitation thereof.

44. As a direct and proximate result of Apple's statutory unfair competition, Apple has been unjustly enriched in an amount to be determined at trial.

## FOURTH CAUSE OF ACTION (In the Alternative)
## Correction of Registration (15 U.S.C. § 1119)

45. Plaintiffs repeat and reallege each and every previous allegation and incorporates them by reference as if fully set forth herein.

46. Both the dissolved (at the time of application) Washington corporation (emonster, Inc.) and the existing Japanese corporation (emonster k.k.) had been acting as a single commercial enterprise at the time of application for the ANIMOJI mark.

47. Plaintiffs are therefore entitled to a correction of registration, if necessary, for Reg. No. 4,712,559.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs hereby request that this Court:

A. Enter preliminary and permanent injunctions restraining and enjoining Apple and its agents, servants, employees, and all persons acting thereunder, in concert with, or on their behalf, from using in commerce the ANIMOJI mark or any colorable imitation or confusingly similar variation thereof;

B. Award Plaintiffs their ascertainable damages, costs, and attorney fees, including punitive damages;

C. Award Plaintiffs Apple's profits attributable to Apple's unauthorized use of Plaintiffs' ANIMOJI mark;

D. Award Plaintiffs all amounts by which Apple has been unjustly enriched through its use of Plaintiffs' ANIMOJI mark;

E. Award such other and further relief as this Court deems just and proper, including (if necessary) rectifying the registry.

Plaintiffs demand a trial by jury on all issues so triable.

Dated:  October 18, 2017

Respectfully Submitted,
OLEG ELKHUNOVICH
DREW D. HANSEN
JUSTIN A. NELSON
KATHERINE PEASLEE
**SUSMAN GODFREY L.L.P.**

By: */s/ Oleg Elkhunovich*
    *Attorneys for Plaintiffs*